**S. D. BENDALIN, Appellant,**

v.

**Robert R. DELGADO, Sr., Appellee.**

**No. 5754.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 1, 1965.

Rehearing Denied Dec. 22, 1965.

Gerald B. Shifrin, El Paso, for appellant.

Lipscomb, Fisk & Cox, El Paso, for appellee.

FRASER, Chief Justice.

The parties will be designated as they appear in the court below. Defendant Bendalin is appellant in this court, and plaintiff Delgado is appellee.

Plaintiff brought suit for specific performance on an alleged oral contract with defendant Bendalin, alleging that, under certain conditions, defendant had agreed that he and his associates would buy back the 50 shares of stock which plaintiff was about to purchase in a corporation in which defendant was a large stockholder, director and President. Plaintiff had accepted employment in the corporation after a conversation with defendant. He states he was to replace a Mr. McCutcheon and function as yard foreman or manager. As described in appellant's brief, he was hired as general manager of said corporation, to-wit, Consumers Wholesale Lumber Company, Inc. It seems to have been agreed between the parties that plaintiff was to purchase 50 shares of stock which, at that time, were in

Mr. McCutcheon's name. Defendant called at the lumber yard and picked up plaintiff and, during the ride enroute to the El Paso National Bank, it is alleged by plaintiff that he asked Mr. Bendalin what would happen to the stock he was about to buy if his employment with the corporation should terminate. According to plaintiff's testimony Mr. Bendalin said that he and his associates would buy the stock back from the plaintiff should such eventuality arise. Plaintiff further testified that no price for the stock on re-purchase was agreed upon. Mr. Bendalin, the defendant, denies that such conversation took place or that such agreement was ever reached. Plaintiff alleges that he withdrew his lifetime savings amounting to some $3400 or $3500, from a savings and loan company, and used it and a note payable to the El Paso National Bank, to make up the payment (approximately $5000) for the stock previously held by Mr. McCutcheon. McCutcheon owed some $4,632.95 on a note to the El Paso National Bank, which sum he had presumably borrowed to pay for his stock. This note, executed by Mr. McCutcheon, was co-signed by Mr. Bendalin and Dr. Vinikoff. When Mr. Delgado paid in his money and executed his note, the McCutcheon note to the bank was canceled and, of course, Mr. Bendalin and Dr. Vinikoff were released as co-signers or sureties thereon. So, at the close of the transaction, Mr. McCutcheon's note was canceled and Mr. Delgado had put in the cash he had withdrawn from his savings account and executed a note for some $1800 which, according to the record, he paid off eventually. Mr. Bendalin and Dr. Vinikoff, both substantial stockholders in the corporation, had co-signed the note executed by plaintiff for the balance of the purchase price of the stock. According to plaintiff, his conversation with Mr. Bendalin took place in 1960. In February of 1962 plaintiff resigned his position and asked defendant to repurchase the stock. The defendant declined to do so, whereupon plaintiff brought suit. The case was submitted to the jury on special issues, and upon the answers thereto the trial court awarded plaintiff judgment in the sum of $2,867.44.

The appellant has presented seven points of error. The first four points deal with the defendant's claim that even if there was an oral agreement, it was unenforcible because no specific price had been agreed upon in case the stock were to be repurchased by Mr. Bendalin, and that there was no proper way to enforce the alleged oral agreement, and that it was improper for the jury to ascertain the reasonable value of the stock on February 21, 1962, the date on which plaintiff alleges he tendered the stock for repurchase to Mr. Bendalin.

Taking these first four points as a group, we believe that the trial court was within his rights in entering judgment for the plaintiff, and did not commit error in so doing. Plaintiff-appellee maintains—and cites several cases in support of his position—that a contract can be specifically enforced even if an exact price or time is not stated. We believe these authorities are sufficient to support the court's action and the plaintiff's contention here. For example, in Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555, the Supreme Court of Texas stated:

"* * * Absolute certainty is not necessary. 'The certainty required in a contract which renders it subject to an action for specific performance is a reasonable certainty.' Wilson v. Beaty, Tex.Civ.App., 211 S.W. 524, 527 (application for writ of error refused); Stevens v. Palmour, Tex.Civ.App., 269 S.W. 1057, 1059, 1060; Ward v. Stuart, 62 Tex. 333, 335, 336."

In another case, to-wit, Ford Motor Co. v. Davis Brothers, Inc., Tex.Civ.App., 369 S.W.2d 664 (n.w.h.), the court, quoting from 17 C. J. S., Contracts § 36(2), at page 659, says: "'A contract need not specify price since, if no price is stated, it will be presumed that a reasonable price was intended.'" Appellee presents a line of cases holding that where a contract does

## 892

not specify a time of performance, the law implies a reasonable time. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; Johnson et al. v. Mansfield, Tex.Civ.App., 166 S.W. 927. We believe the court, therefore, was within his authority in submitting an issue to the jury asking them to establish the reasonable value of the stock on the date that plaintiff tendered it for repurchase to Mr. Bendalin. Further, we believe that the appellee in his brief has successfully distinguished the cases presented by appellant.

In his first four points appellant also urges that not only was there no agreement setting a price for the repurchase of the stock, but that the finding by the jury of the reasonable value thereof was not supported by the evidence. However, the record shows that there was testimony by a Mr. Bell and by Mr. Bendalin bearing on the value of the stock and the manner of arriving at value or market price for stock of a similar nature. It appears from the record that there was a balance sheet purporting to show the net worth of the Consumers Wholesale Lumber Company, Inc. on December 31, 1961. This balance sheet indicates the net worth of the stock, sets forth the accounts receivable, inventory, etc. These matters were presented by plaintiff in his Exhibit No. 6.

We believe the judgment entered herein was a proper finding by the trial court and well warranted by the record. The jury found, in answer to Issue No. 1, that the defendant agreed to repurchase the stock bought by plaintiff if and when plaintiff ceased to be an employee of the lumber company. The jury further found, in answer to Issue No. 2, a figure representing the reasonable value of the stock bought by Mr. Delgado, as of February 21, 1962 (the date on which Mr. Delgado tendered the stock to defendant for repurchase). Our examination of the record convinces us that both the questions and the answers thereto were warranted and were supported by the evidence. Appel-

lant's first four points are therefore overruled.

The appellant's fifth point states that there was no evidence as to the value of this stock on February 21, 1962, the date on which it was tendered to the defendant. Under the "no evidence" rule, we believe this point must be overruled for, as we have stated above, there is evidence of probative value here as to the value of the stock on the aforesaid date. Appellant's fifth point is therefore overruled.

Appellant's sixth point states that the jury's finding of the sum of $2,867.44 as the reasonable value of the stock on such date is contrary to the evidence and excessive. Based on the record and the evidence therein, as set forth above, we believe this point must also be overruled.

The seventh point presented by appellant maintains that the court abused its discretion in allowing plaintiff to file a trial amendment a month after the verdict, but before judgment. We do not find harm in this point because this amendment, according to appellant, seeks to interject the issue of damages alternatively with that of specific performance. We do not think this presents error because, in our opinion, the result would be the same whether specific performance were decreed or damages allowed. We have already discussed the matter of the propriety of submitting the aforesaid issues to the jury relating to the value of the stock and have pointed out that there are cases holding that where either price or time is not specifically set forth, then a reasonable price or reasonable time will be considered to have been the intention of the parties to the contract. Further, appellee points out that defendant did not plead surprise or present evidence that he would have presented had the amendment been filed before the jury returned its answers to the special issue questions. Appellant's seventh point is overruled.

Therefore, it appears to us that there was sufficient evidence to warrant the jury finding that defendant did agree to repurchase the stock that Mr. Delgado had bought if his employment should for any reason be terminated; and because we believe the court was correct in submitting to the jury the question of the reasonable value of the stock (where no specific price had been set by the parties) and that there was sufficient evidence to support the jury's answer to such issue, we believe the trial court reached the correct result and its decision should be affirmed.

All appellant's points having been overruled, the judgment of the trial court is affirmed.